UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GREGORY PERRY,

    Plaintiff,

v.

JAMES T. PLOUSIS, *et al.*,

    Defendants.

Civ. No. 18-11224 (KM) (MAH)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.**

## I. INTRODUCTION

Plaintiff Gregory Perry, a former state inmate, is proceeding pro se with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. Presently before the Court is a motion to dismiss filed by Defendants Vilmary Lopez and Joseph Leake. (DE 43.) For the reasons set forth below, the motion will be granted.

## II. BACKGROUND

### A. Allegations of the Complaint[1]

The Court recites only the facts necessary to resolve this motion. Plaintiff states that on January 30, 2018, he was paroled from the New Jersey Department of Corrections and entered a required 180-day Re-Entry Substance Abuse Program ("RESAP") administered by the GEO Group. (DE 9 at 4.) Prior to his release, Plaintiff signed a document describing the "general" and "special conditions" of his release. (*Id.*) Upon arriving at his assigned RESAP facility, Delaney Hall, Plaintiff also signed a "Community Programs Consent Form" which outlined the facility's

---

[1] For the purposes of this motion, the Court accepts as true the factual allegations set forth in the complaint. *See New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

search policy. (*Id.*) Plaintiff states that from the date he arrived at Delaney Hall until June 3, 2018, he was only subjected to random pat-down searches of his person by GEO Group employees. (*Id.* at 4–5.) His living space was never searched. (*Id.* at 5.)

On June 1, 2018, Plaintiff filed a grievance against Defendant Robert Jones, a shift supervisor at Delaney Hall. (*Id.*) Three days later, on June 4, 2018, Defendant Juanita Roberson, a counselor at the facility, searched Plaintiff's living space. (*Id.*) Plaintiff states that Defendant Jones ordered Defendant Roberson to conduct the search after he learned of Plaintiff's grievance. (*Id.*) During the search, Defendant Roberson found $400.00, an amount in excess of the $50.00 Plaintiff was permitted to have. (*Id.*)

As a result of this possession of "contraband," Plaintiff was removed from the work release component of the RESAP program and required to complete a punitive program assignment that included undertaking an "extra duty roster," writing an essay, and providing "answers to specific questions designed to address the resident's offending behavior." (*Id.* at 6.) Plaintiff alleges that the person who issued this punishment was Defendant Vilmary Lopez, an employee of the Division of Parole in charge of ensuring individuals abide by and complete the conditions of the RESAP program. (*Id.* at 2–3, 6.) The decision, according to Plaintiff, "was based on a presumably (and non-existent) zero-tolerance policy for having possessed U.S. currency beyond the $50.00 limit." (*Id.*) Plaintiff subsequently filed another grievance, alleging that the search of his living quarters violated the Division of Parole's search policies and was motivated by Defendant Jones's retaliatory animus. (*Id.* at 5.)

On June 11, 2018, Plaintiff's first grievance regarding Defendant Jones was adjudicated by Defendant Krusznis, the acting director of Delaney Hall. (*Id.* at 3, 7.) Defendant Krusznis determined that Plaintiff's grievance was "unsustainable." (*Id.* at 7.)

On June 12, 2018, while Plaintiff was working in the law library, Defendant Jones directed Defendant Roberson to remove Plaintiff from the room. (*Id.* at 6.) After Plaintiff explained that he had received permission from another supervisor to use the law library, Defendant Roberson disconnected the computer printer and moved it into her office. (*Id.*; DE 9-1 at 10.) The following day, Defendant Krusznis ordered the printer returned to the law library. (DE 9 at 7.)

On June 14, 2018, Plaintiff filed another grievance. (*Id.* at 9.) This time, he alleged that the unlawful search of his room violated Delaney Hall's own search policies, in addition to those promulgated by the Division of Parole. (*Id.*) Defendant Krusznis "summarily rejected the substantive content of the grievance and denied the claim." (*Id.*) On June 22, 2018, Plaintiff engaged in a "heated discussion" with Defendant Krusznis about the denial of his grievances. (*Id.* at 8.) Plaintiff states that, in retaliation for his filing of grievances, Defendants Lopez, Krusznis, and "others," arranged to have him transferred to another RESAP facility, the "Albert 'Bo' Robinson Assessment Center." (*Id.*)

On July 5, 2018, after being transferred to the Robinson Assessment Center, Plaintiff was working in the facility's library. (*Id.* at 9.) He filled out a grievance form regarding "the arcane telephone procedures" and printed it out in the computer lab. (*Id.*) Defendant Melissa Newborn, the clinical director of the Robinson Assessment Center, apparently noticed the printout and "became alarmed." (*Id.* at 3, 9.) Thereafter, Plaintiff alleges, Defendant Newborn and Defendant Joseph Leake, an employee of the Division of Parole responsible for ensuring individuals abide by and complete the conditions of the RESAP program, initiated the process to revoke Plaintiff's parole. (*Id.* at 9.) The purported basis for Plaintiff's parole revocation was his filing of numerous "false and misleading requests." (*Id.*) Plaintiff states he was subsequently "negatively discharged" from the Robinson Assessment Center, and a parole warrant was "fabricated" indicating that he

was "not amenable to clinical programming." (*Id.*) Plaintiff alleges, however, that his parole revocation was "vindictive and illegal." (*Id.* at 8.)

On July 10, 2018, Plaintiff was returned to the New Jersey Department of Corrections and placed in the Mercer County Correctional Facility. (*Id.* at 9.) He was released from custody on August 8, 2018. (*Id.*)

B. **Procedural History**

Plaintiff initiated this action on June 29, 2018. (DE 1.) On October 10, 12, 2018, Plaintiff filed an amended civil rights complaint naming the following Defendants: James Plousis, Vilmary Lopez, "Krusznis," Robert Jones, Juanita Roberson, Melissa Newborn, Joseph Leake and John and Jane Does. (DE 9 at 2–4.) The amended complaint raises claims of First Amendment retaliation, Fourth Amendment unlawful search and seizure, and Fourteenth Amendment procedural and substantive due process violations. (*Id.* at 10.) Plaintiff sues each Defendant in his or her individual and official capacity and seeks monetary damages. (*Id.* at 11.)

Presently before the Court is the motions of Defendants Leake and Lopez motion to dismiss the claims against them in the amended complaint. (DE 43.) ("Defendants" herein, unless otherwise specified, refers to these two movants.) The motion was filed on April 17, 2020. Plaintiff did not file any opposition. I nevertheless review the allegations for sufficiency under the relevant legal standards, which are as follows.

III. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the

4

complaint as true and view them in the light most favorable to the plaintiff. *See New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

The facial plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Id.* at 678.

**IV.   ANALYSIS**

    **A.   Official Capacity Claims**

Defendants first assert that under § 1983, Plaintiff cannot sue them in their official capacity for monetary damages. Section § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

> deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

To state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 claims for monetary damages against a state official sued in his or her official capacity, however, are barred by Eleventh Amendment immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989). "[A] state official sued in his or her official capacity is not a 'person' for the purposes of § 1983 where the relief sought is monetary damages because the Supreme Court has not construed § 1983 as an abrogation of the states' Eleventh Amendment Immunity." *Lewis v. Wetzel,* 153 F. Supp. 3d 678, 699 (M.D. Pa. 2015) (citing *Will*, 491 U.S. 58, 63–71). In the instant action, Plaintiff has indeed sued Defendants in both their official and individual capacities and sought only relief in the form of monetary damages. (DE 9 at 11.) Since Plaintiff's official capacity claims against Defendants for monetary damages are barred by Eleventh Amendment immunity, these official-capacity claims must be dismissed.

### B.     First Amendment Retaliation

Defendants next assert that Plaintiff has not provided sufficient factual allegations to support a First Amendment retaliation claim against them. (DE 43-1 at 11.) Defendants argue that the amended complaint is devoid of any information showing Defendants knew that Plaintiff had filed grievances or that Defendants' actions were motivated by those grievances. (*Id.*)

6

To assert a claim for First Amendment retaliation under § 1983, a plaintiff must allege: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (internal footnotes and citations omitted). As to the first prong, it is well established that the filing of a grievance constitutes conduct protected by the First Amendment. *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002); *see also Martin v. Gearhart*, 712 F. App'x 179, 187 (3d Cir. 2017); *Nifas v. Coleman*, 528 F. App'x 132, 134 (3d Cir. 2013). As to the second prong, an adverse action is a punishment sufficient to "deter a person of ordinary firmness from exercising his constitutional rights." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Finally, with regard to the third prong, a causal connection may be shown through either "an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action" or "a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). If a plaintiff cannot demonstrate either of those connections, he must establish that "from the evidence in the record as a whole, the trier of fact should infer causation." *Id*. "Where the temporal proximity is not so close as to be 'unduly suggestive,' the appropriate test is timing plus other evidence." *Id*. at 424 (internal quotation marks and citation omitted).

    *i.*    *Defendant Lopez*

Plaintiff appears to allege two instances of retaliation by Defendant Lopez. First, Plaintiff alleges that after a search of his living area yielded contraband, Defendant Lopez had Plaintiff removed from the work release program and required him to complete a punitive program assignment. (DE 9 at 6.) Second, Plaintiff states simply that Defendant Lopez, among others, "arranged to have plaintiff administratively transferred" to another facility in retaliation for filing

grievances. (*Id.* at 8.) On neither of these occasions, however, does Plaintiff provide any allegation that Defendant Lopez even knew that Plaintiff had filed a grievance. *See Ambrose v. Twp. of Robinson,* 303 F.3d 488, 493 (3d Cir. 2002) ("It is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct."). By Plaintiff's own explanation, his termination from the work release program and completion of a punitive assignment stemmed from his possession of contraband. (DE 9 at 6.) Plaintiff does not allege that Defendant Lopez knew that Plaintiff had filed a grievance against Defendant Jones, let alone that Plaintiff's punishment, which had an obvious basis, was actually motivated by Plaintiff's grievance.

Further, Plaintiff merely states as a conclusion that "Defendants Lopez, Krusznis, and others, arranged to have plaintiff administratively transferred" to another facility in retaliation for having filed grievances. (*Id.* at 8.) Plaintiff does not provide further context. Absent additional information, this assertion does not establish that Defendant Lopez was aware of any grievances Plaintiff filed, or that those grievances were a substantial or motivating factor in Defendant Lopez's decision to have Plaintiff transferred. *See Twombly*, 550 U.S. at 555 (stating that although a plaintiff's complaint need not contain detailed factual allegations, a plaintiff must still provide "more than labels and conclusions, and formulaic recitation of the elements of a cause of action"); *see also Iqbal*, 556 U.S. at 678 (holding that a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Accordingly, Plaintiff's retaliation claims against Defendant Lopez are dismissed without prejudice.

*ii.  Defendant Leake*

Plaintiff's First Amendment retaliation claim against Defendant Leake appears to stem from Leake's involvement in Plaintiff's parole revocation. (DE 9 at 9.) Plaintiff alleges that Defendant Newborn observed Plaintiff's completion of a grievance form regarding the "arcane telephone procedures" at the Robinson Assessment Center and "became alarmed." (*Id.*) Shortly thereafter, Defendant Newborn and Defendant Leake initiated the process to have Plaintiff discharged from the RESAP program. (*Id.*) Plaintiff states that the basis for his discharge was his alleged filing of "false and misleading requests." (*Id.*) Attached to Plaintiff's amended complaint is the discharge report completed by Defendant Newborn, which states that Plaintiff used the facility's computer lab without authorization and that, on multiple occasions, he "lied" to staff members. (DE 9-1 at 30.)

Based upon the information provided by Plaintiff, there is no indication that Defendant Leake was aware Plaintiff had filed a grievance or, to the extent Defendant Leake was involved in Plaintiff's discharge, that Plaintiff's grievance was a substantial or motivating factor in Defendant Leake's decision to revoke Plaintiff's parole. In fact, Plaintiff states only that *Defendant Newborn* observed his completion of a grievance form. (DE 9 at 9.) And, based on the exhibits Plaintiff submitted with his complaint, it was only Defendant Newborn who completed Plaintiff's discharge report from the Robinson Assessment Center. (DE 9-1 at 30.) Defendant Leake is not mentioned anywhere in the report. (*Id.*) The only mention of Defendant Leake's involvement in Plaintiff's parole revocation is Plaintiff's bald assertion that Defendant Leake helped initiate discharge proceedings. Without more, Plaintiff's amended complaint lacks sufficient information to state a First Amendment retaliation claim against Defendant Leake.

### C. Unauthorized Search

In Plaintiff's second claim for relief, he alleges that Defendant Lopez "violated his reasonable expectation of privacy" by searching his living area on June 4, 2018. (DE 9 at 10.) Defendants argue, however, that Plaintiff's amended complaint fails to set forth any facts that Defendant Lopez was involved in the June 4, 2018 search. (DE 43-1 at 13.) While a plaintiff's complaint is not required to contain detailed factual allegations, the plaintiff must at least provide sufficient factual allegations which allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Here, Plaintiff's amended complaint lacks any allegations that Defendant Lopez was involved in the June 4, 2018 search of Plaintiff's living area. There is no indication that Defendant Lopez ordered the search, participated in the search, or even knew that the search was occurring. Accordingly, irrespective of the permissibility, or not, of the search, Plaintiff's unauthorized search claim against Defendant Lopez will be dismissed without prejudice.

### D. Substantive and Procedural Due Process Violations

In Plaintiff's third claim, he states only that Defendants' "collective actions operated to deny plaintiff procedural and due process protections, as defined in the Fourteenth Amendment to the United States Constitution." (DE 9 at 10–11.) Plaintiff does not elaborate further. (*Id.*) Although a pro se plaintiff's pleadings are liberally construed, the plaintiff must still do more than provide a "blanket assertion" that he is entitled to relief. *Phillips*, 515 F.3d at 232. Rule 8 of the Federal Rules of Civil Procedure requires at least a "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). Here, as Defendants point out, Plaintiff provides no more than a bald assertion that Defendants violated his Fourteenth Amendment rights. Indeed, without more information, it

is unclear what substantive or procedural due process violations Plaintiff is alleging occurred. (*See generally* DE 9 at 10–11.) Thus, this claim will be dismissed without prejudice.

## V.     CONCLUSION

For the foregoing reasons, the motions of Defendants Lopez and Leake to dismiss the complaint (DE 43) will be GRANTED. The official capacity claims against Defendants for monetary damages will be dismissed with prejudice, because amendment would be futile. The First Amendment retaliation claim, the unauthorized search claim, and the Fourteenth Amendment due process claim against Defendants will all be dismissed without prejudice to the submission, within 30 days, of a proposed amended complaint. An appropriate order follows.


DATED:  November 30, 2020                           /s/ Kevin McNulty
                                                                    _____
                                                                    KEVIN MCNULTY
                                                                    United States District Judge